Slip-Op. 09-2

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - -- -x
DORBEST LTD.; RUI FENG WOODWORK  :
(DONGGUAN) CO. LTD.; RUI FENG    :
LUMBER DEV. (SHENZHEN) CO. LTD., :
                                 :
            and                  :
                                 :
AM. FURNITURE MFRS. COMM. FOR    :
LEGAL TRADE; VAUGHAN-BASSETT     :
FURNITURE CO. INC.; CABINET      :
MAKERS, MILLMEN, & INDUS.        :
CARPENTERS LOCAL 721; UBC S.     :
COUNCIL OF INDUS. WORKERS LOCAL  :
2305; UNITED STEEL WORKERS OF AM.:
LOCAL 193U; CARPENTERS INDUS.    :
UNION LOCAL 2093; TEAMSTERS,     :
CHAUFFEURS,WAREHOUSEMEN & HELPERS:
LOCAL 991; IUE INDUS. DIV. OF CWA:
LOCAL 82472                      :
                                 :
      Plaintiffs/Defendant-      :
               Intervenors,      :
                                 :
               v.                : Before: Pogue, Judge
                                 : Consol. Ct. No. 05-00003
UNITED STATES,                   :
                                 :
            Defendant,           :
                                 :
DONGGUAN LUNG DONG/DON HE        :
ART HERITAGE INT'L, LTD/SUPER ART:
FURNITURE CO./ARTOWRK METAL &    :
PLASTIC CO./JIBSON INDUS. LTD./  :
ALWAYS LOYAL INT'L; FORTUNE GLORY:
LTD. (HK LTD.)/ NANHAI JIANTAI   :
WOODWORK CO.; FINE FURNITURE     :
(SHANGHAI) LTD.; COASTER CO. OF  :
AM.; COLLEZIONE EUROPA, USA,     :
INC.; FINE FURNITURE DESIGN &    :
MKTG. LLC; GLOBAL FURNITURE, INC.,:
HILLSDALE FURNITURE, LLC;        :
KLAUSSNER INT'L, LLC; MAGNUSSEN  :
HOME FURNISHINGS INC.;           :
L. POWELL CO.; RIVERSEDGE        :
FURNITURE CO.; WOODSTUFF MFG.    :
INC., D/B/A SAMUEL LAWRENCE;     :
SCHNADIG   CORP.; GOOD COS.;     :
STANDARD FURNITURE MFG. CO.      :
                                 :
         Defendant-Intervenors.  :
- - - - - - - - - - - - - - - ----x
```

[Commerce's remand determination sustained].

Consolidated Ct. No. 05-00003                           Page 2

     Troutman Sanders LLP (Jeffrey S. Grimson, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Brady W. Mills, Mary S. Hodgins) for Dorbest Limited et al.;

     King & Spalding, LLP (Joseph W. Dorn, Stephen A. Jones, Jeffrey M. Telep, J. Michael Taylor, Elizabeth E. Duall) for the American Furniture Manufacturers Committee for Legal Trade et al.;

     Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Brian A. Mizoguchi); Rachel E. Wenthold, Senior Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for the United States Department of Commerce;

     Mowry International Group, LLC (Jill Cramer and Kristin H. Mowry) and Howe & Russell, PC (Kevin Russell) on behalf of Art Heritage International, Limited et al.; and

     Trade Pacific, PLLC (Robert G. Gosselink) on behalf of Dongguan Lung Dong/Dong He et al.

                                   Decided: January 7, 2009

     POGUE, Judge: This matter returns to court after a second partial remand following the court's most recent decision, Dorbest Ltd. v. United States, 547 F. Supp. 2d 1321 (CIT 2008) ("Dorbest II"). Dorbest II remanded the matter to the Department of Commerce ("Commerce") so that it could: (1) determine the correct heading of the Harmonized Tariff Schedule of India ("HTS[I]") for the valuation of Dorbest's cardboard input, id. at 1337, (2) provide adequate support or explanation for its selection of surrogate companies for use in the calculation of SG&A financial ratios, id. at 1344, (3) explain its reasoning in calculating offsets to SG&A and interest expenses with short-term interest income earned on working capital accounts or current assets, id. at 1347-8, and (4)

Consolidated Ct. No. 05-00003                              Page 3

calculate the separate rate for non-mandatory respondents without

creating or using data known to be invalid, id. at 1351.   Also

before the court is Petitioner AFMC's contention that Commerce must

correct a ministerial error with respect to the valuation of

rubberwood.

### STANDARD OF REVIEW

    The court reviews remand determinations for compliance with

the court's remand order.   See NMB Sing. Ltd. v. United States, 28

CIT 1252, 1259-60, 341 F. Supp. 2d 1327, 1333-34 (2004) (affirming

International Trade Commission's determinations on remand where the

determinations were in accordance with law, supported by

substantial evidence, and otherwise satisfied the remand order);

see also Olympia Indus., Inc. v. United States, 23 CIT 80, 82-83,

36 F. Supp. 2d 414, 416 (1999) (affirming after "review[ing]

Commerce's compliance with these instructions in its Remand

Results" and finding the determination to be supported by

substantial evidence and in accordance with law).   In addition, any

factual findings on remand must be supported by substantial

evidence and the agency's legal determinations must be in

accordance with law. 19 U.S.C. § 1516a(b)(1)(B); see, e.g., Huaiyin

Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed.

Cir. 2003); AG der Dillinger Huttenwerke v. United States, 28 CIT

94, 95, 310 F. Supp. 2d 1347, 1349 (2004) (holding remand

determination to legal and factual standards set out in 19 U.S.C.

Consolidated Ct. No. 05-00003                          Page 4

§ 1516a(b)(1)(B)).


**DISCUSSION**

     The court considers each issue in turn:

1. Valuation of Cardboard

     Dorbest II granted Commerce's request for a voluntary remand
to "determine under which subheading Dorbest's [cardboard] input
would properly be classified," and further directed Commerce to
"determine whether the data put forth by Dorbest regarding
distortion to data in subheading 4808.1000 necessitates alteration
of the data used or the selection of a different subheading."
Dorbest II, 547 F. Supp. 2d at 1338.

     On remand, Commerce determined that HTS[I] subheading
4808.1000 provided the better classification for Dorbest's
cardboard input. Final Results of Redetermination Pursuant to Court
Remand, Dorbest Ltd.; Rui Feng Woodwork (Dongguan) Co. Ltd.; Rui
Feng Lumber Dev. (Shenzhen) Co. Ltd. v. United States, Consol.
Court No. 05-00003 July 15, 2008) ("Final Results") at 4.   In
support of this determination, Commerce compared Dorbest's own
description of its input with the subheadings at issue, noting that
Dorbest described its cardboard input as "paper cardboard."  Id. at
4 (quoting Dorbest Response to HTS Request, Attachment 1, May 26,
2004, P.R. 1152, fr.7).

     HTS[I] heading 4808 covers "Paper and paperboard, corrugated

(with or without glued flat surface sheets), creped, crinkled,
embossed or perforated, in rolls or sheets, other than paper of the
kind described in 4803." Subheading 4808.1000 in turn covers
"Corrugated paper and paperboard, whether or not perforated."
Commerce also considered Subheading 4808.9000, which is a residual
or basket category, "other", covering items not covered by the
first three subheadings of heading 4808. Generally, such basket
categories should be used only when no more specific category is
appropriate. See Witex, U.S.A., Inc. v. United States, 28 CIT 1907,
1916-17 & n. 16, 353 F. Supp. 2d 1310, 1319 & n. 16 (2004).
Furthermore, because Dorbest's own description of its product seems
to fit under subsection 4808.1000, there is a good reason to favor
this heading unless it is unreasonable, for some other reason, to
do so.

Dorbest claims, however, that information from Infodrive India
demonstrates that 4808.1000 is not an appropriate heading for two
reasons. First, Dorbest claims that Infodrive data show that many
items in 4808.1000 are "misclassified", and second, a large
percentage of the items classified under 4808.1000 are finished
cardboard boxes, a value-added product that differs from Dorbest's
product.

In response, Commerce contends that the data from Infodrive
are, at least in this case, unreliable, as they are significantly
incomplete, because they do not cover or include at least 40% of

all imports classified under 4808.1000.  Furthermore because the

information in Infodrive is presented in a large number of

different units of measurement, many of which are incommensurable,

Commerce contends that it is not able to use this data to check its

otherwise reasonable determination to use subheading 4808.1000.

Final Results at 5-6.

    Dorbest's arguments on this point are essentially similar to

those that the court previously rejected when made with regard to

Dorbest's resin input.  Dorbest II, 547 F. Supp. 2d at 1333.  Here

the court notes, once again, that when Commerce weighs or evaluates

the evidence and chooses between imperfect alternatives, so long as

its decision is supported by substantial evidence, the court must

affirm.  As in the earlier decision regarding resin, here Commerce

has evaluated the evidence and chosen between imperfect

alternatives for valuing Dorbests' cardboard input. As there is

substantial evidence supporting its decision, that decision is

affirmed. See also, Nippon Steel Corp. v. United States, 458 F.3d

1345, 1350-52 (Fed.Cir.2006)(concluding that 'substantial evidence'

connotes reasonableness review).

    Dorbest also argues that Commerce's valuation of cardboard in

its remand determination is unfair because other respondents

received different values during the investigation.  This claim is

without merit.  As no other parties contested the original value

selected by Commerce, Commerce did not have occasion to reexamine

the cardboard valuations assigned to the other respondents. Therefore, because these other cardboard valuations were not at issue here, they were not part of the court's remand order to Commerce, and Commerce therefore had no duty to consider them.


## 2. SG&A Financial Ratios

In its initial remand to Commerce, Dorbest Ltd. v. United States, 30 CIT _, 462 F. Supp. 2d 1262 (2006)("Dorbest I"), the court noted that Commerce generally considers quality, specificity, contemporaneity and representativeness when judging the appropriateness of surrogate values for use in the calculation of financial ratios. Id. at 1301. The court emphasized "that Commerce must apply its selection criterion in a consistent and uniform manner, otherwise its selection could become arbitrary and capricious." Id.

In Dorbest II the court again remanded this issue with instructions to Commerce that it must support its conclusion that including data from four companies much smaller than Dorbest -- Fusion Design Private Ltd., DnD's Fine Furniture Ltd., Nizamuddin Furniture Ltd., and Swaran Furniture Ltd. -- did not distort the calculated financial ratios, given the apparent correlation between company size and financial ratios. Dorbest II, 547 F. Supp. 2d at 1343-44. Dorbest II specifically noted that "Commerce's determination to include SG&A ratios which it has determined are

Consolidated Ct. No. 05-00003                                      Page 8

'comparable' to those of companies of other sizes may be within the
agency's discretion, if based on proper findings regarding the
effect of including much smaller companies in its data set.
Commerce's remand determination, however, does not contain such
findings." Id. at 1343.

In its Final Results, Commerce again made no such findings.
Instead, Commerce claims that their prior method of calculation,
the one the court previously rejected, is sufficient, and that a
more sophisticated approach is neither necessary nor, given the
data Commerce has, possible. Final Results at 19. However, as
Commerce correctly recognizes, merely repeating arguments that have
already been rejected will not suffice. Because Commerce has chosen
to add no new arguments or analysis, it has decided to exclude the
companies in question from its calculation of SG&A ratios. Id. As
both Dorbest and the court are satisfied with Commerce's decision
to remove the companies in question -- even if not with Commerce's
reasons -- the court now affirms Commerce's calculation of SG&A
ratios.


3. Interest Income

In Dorbest II the court remanded to Commerce its consideration
of interest income, directing it to "explain its reasoning and its
factual determinations regarding the offset of SG&A expenses with
short-term interest [for DnD and Raghbir]." Dorbest II, 547 F.

Consolidated Ct. No. 05-00003                            Page 9

Supp. 2d at 1347-48.  Because Commerce has now excluded DnD from

its calculations of surrogate financial ratios, only the offset for

Raghbir is at issue.

     In its <u>Final Results</u>, Commerce explained its practice of

allowing an offset to SG&A and interest expenses for short-term

interest income earned on investments of working capital accounts,

that is, current assets.  <u>Final Results</u> at 25.  <u>See also</u>

<u>Antifriction Bearings (Other Than Tapered Roller Bearings) and</u>

<u>Parts Thereof From the Federal Republic of Germany; Final Results</u>

<u>of Antidumping Duty Administrative Review</u>, 56 Fed. Reg. 31692,

31734 (Dep't Commerce July 11, 1991) (final determination).

Commerce explained that, because it does not take long-term

interest income to relate to current operations, it does not offset

interest expense with interest income earned on long-term

investments.  <u>Final Results</u> at 26.  Commerce further explained

that, in cases arising from non-market economies that do not allow

for a detailed analysis of the assets that generate interest

income, it has established the practice of examining the assets on

the balance sheet of the surrogate financial statement so as to

determine the ratio or percentage of short term to total interest-

bearing assets.  <u>Id.</u>  <u>See also</u> <u>Notice of Final Results of</u>

<u>Antidumping Duty Administrative Review and Final Partial</u>

<u>Rescission: Certain Cut-to-Length Carbon Steel Plate from Romania</u>,

72 Fed. Reg. 6522 (Dep't Commerce February 12, 2007) (final

determination). This percentage is then applied to the interest income earned to give an approximation of the short-term portion of total interest income. Final Results at 26.

However, in the present case Commerce did not need to use this method as, in its investigation of Raghbir's balance sheets, it found all of the interest-bearing assets of the company to be short-term in nature. Final Results at 27. Having presented evidence that all of Raghbir's interest-bearing assets are "current assets", and finding that there was no evidence of interest earned from long-term investments, Commerce concluded that any interest income earned by Raghbir must be short-term in nature. Id. at 26-27. Given this, Commerce concluded that it was appropriate to offset all of Raghbir's interest income against its interest expenses. Id. at 28. As these conclusions are supported by substantial evidence, and are furthermore not contested by any party, the court affirms Commerce's conclusion as to interest income.

4. Calculation of the Separate Rate

After the court's initial remand to Commerce in Dorbest I, Commerce adjusted Dorbest's margin as a result of Dorbest's and AFMC's court challenges. Final Results at 28. Because AFMC's complaint also addressed the margin applicable to other mandatory and non-mandatory (separate rate) respondents, Commerce also

calculated new rates for those companies. <u>Id.</u> at 28-29. However, in recalculating the separate rate on remand, Commerce took into account only the changes that resulted from AFMC's challenge and not those that resulted from Dorbest's challenge. As a result, when calculating the separate rate, Commerce used an invalid and fictitious rate of 8.52% for Dorbest, rather than the rate of 2.87% that Commerce actually assigned to Dorbest after remand. <u>Id.</u> at 29. As the separate rate is a weighted average of the rates assigned to mandatory respondents, using this invalid and fictitious rate resulted in a higher rate being assigned to the separate rate parties.

In <u>Dorbest II</u>, the court remanded this issue, noting that, while the separate rate companies (referred to collectively as "Art Heritage") were not entitled to the benefits of Dorbest's claim, because they were not parties to that action, Commerce also could not use or create data that it knew to be invalid when better data was easily available. <u>Dorbest II</u>, 547 F. Supp. 2d at 1351. <u>See also</u> <u>D & L Supply Co. v. United States</u>, 113 F.3d 1220, 1223 (Fed. Cir. 1997) (deciding, under the 1988 version of the antidumping law, that "[i]nformation that has conclusively been determined to be inaccurate does not qualify as the 'best information' under any test, and certainly cannot be said to serve the 'basic purpose' [of the statute] of promoting accuracy." ); <u>F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States</u>, 216 F.3d 1027, 1032 (Fed.

Cir. 2000)(affirming Court of International Trade's ruling that Commerce could not use a rate that had been "thoroughly discredited" by Commerce's own investigation). In the court's April 1 order, the court further clarified that Commerce could not use a rate which Commerce knew to be incorrect when better data was available. <u>Dorbest Ltd. v. United States</u>, No. 05-cv-00003 (CIT Apr. 1, 2008) (order granting defendant's motion for clarification).

While Commerce has agreed to follow the court's instructions and not use invalid, fictitious data in calculating the separate rate, the agency does so only "under protest", asserting, along with AFMC, that there is "no legal basis to alter the separate rate based on Dorbest's lawsuit." <u>Final Results</u> at 32. This claim shows two misunderstandings. First, the court has not ordered Commerce to change the separate rate "based on Dorbest's lawsuit", but rather on the basis of well established law that requires Commerce to use the best data available and not to use data it knows to be inaccurate. That Dorbest's action was the cause of Commerce's gaining this more accurate data does not make Dorbest's action the basis of the required change. Secondly, it is well established that the court may exercise its discretion upon remand to prevent the court from knowingly affirming a determination with errors. <u>Maui Pineapple Co. v. U.S.</u>, 27 CIT 580, 603, 264 F. Supp. 2d 1244, 1264 (2003). Here, as in <u>Maui Pineapple</u>, the Art Heritage

companies are not entitled to the fruits of Dorbest's suit, but the
court in turn is not required to affirm a determination it (and
Commerce) knows to be mistaken.  For these reasons the court
affirms Commerce's determination of the separate rate.


## 5. Rubberwood

Finally, the court considers Commerce's decision once again
not to correct a ministerial error, with respect to rubberwood, on
the grounds that the complaint asking for the change was filed in
an untimely manner.  <u>Final Results</u> at 33.  The court has already
dealt with this issue in its previous decision, noting that, while
it is within Commerce's discretionary powers to correct this error,
even when notified of it in an untimely manner, Commerce is not
required to do so "given the length of time that had elapsed, and
the fact that the rubberwood issue was not before Commerce on
remand, and thus was not a 'live' issue."  <u>Dorbest II</u>, 547 F. Supp.
2d at 1348.  Nothing has changed with regard to this issue since
the court's earlier determination.  Additionally, as the court
affirms the rest of Commerce's determination, to remand on this
one, untimely filed, complaint would be especially burdensome,
weighing against such a remand.  For these reasons, the court
affirms Commerce's decision not to reopen the question of the
valuation of rubberwood.

Consolidated Ct. No. 05-00003                                    Page 14

**CONCLUSION**

In summary, the court finds as follows:

(i) Commerce's valuation of cardboard is **affirmed**;

(ii) Commerce's selection of surrogate companies for the computation of the financial ratios is **affirmed**;

(iii) Commerce's calculation of financial ratios with respect to interest income is **affirmed**;

(iv) Commerce's calculation of the separate rate is **affirmed**

(v) Commerce's decision not to revisit a clerical error in the valuation of rubberwood is **affirmed.**

Judgment will be entered accordingly.


                                     /s/ Donald C. Pogue
                                   Donald C. Pogue, Judge


Dated:      January 7, 2009
            New York, New York

Slip-Op. 09-2

## UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - -- - - - -- -x
DORBEST LTD.; RUI FENG WOODWORK       :
(DONGGUAN) CO. LTD.; RUI FENG         :
LUMBER DEV. (SHENZHEN) CO. LTD.,      :

                and                   :
                                      :
AM. FURNITURE MFRS. COMM. FOR         :
LEGAL TRADE; VAUGHAN-BASSETT          :
FURNITURE CO. INC.; CABINET           :
MAKERS, MILLMEN, & INDUS.             :
CARPENTERS LOCAL 721; UBC S.          :
COUNCIL OF INDUS. WORKERS LOCAL       :
2305; UNITED STEEL WORKERS OF AM.     :
LOCAL 193U; CARPENTERS INDUS.         :
UNION LOCAL 2093; TEAMSTERS,          :
CHAUFFEURS,WAREHOUSEMEN & HELPERS     :
LOCAL 991; IUE INDUS. DIV. OF CWA     :
LOCAL 82472                           :
                                      :
        Plaintiffs/Defendant-         :
                  Intervenors,        :
                                      :
                v.                    : Before: Pogue, Judge
                                      : Consol. Ct. No. 05-00003
UNITED STATES,                        :
                                      :
            Defendant,                :
                                      :
DONGGUAN LUNG DONG/DON HE             :
ART HERITAGE INT'L, LTD/SUPER ART     :
FURNITURE CO./ARTOWRK METAL &         :
PLASTIC CO./JIBSON INDUS. LTD./       :
ALWAYS LOYAL INT'L; FORTUNE GLORY     :
LTD. (HK LTD.)/ NANHAI JIANTAI        :
WOODWORK CO.; FINE FURNITURE          :
(SHANGHAI) LTD.; COASTER CO. OF       :
AM.; COLLEZIONE EUROPA, USA,          :
INC.; FINE FURNITURE DESIGN &         :
MKTG. LLC; GLOBAL FURNITURE, INC.,:
HILLSDALE FURNITURE, LLC;             :
KLAUSSNER INT'L, LLC; MAGNUSSEN       :
HOME FURNISHINGS INC.;                :
L. POWELL CO.; RIVERSEDGE             :
FURNITURE CO.; WOODSTUFF MFG.         :
INC., D/B/A SAMUEL LAWRENCE;          :
SCHNADIG   CORP.; GOOD COS.;          :
STANDARD FURNITURE MFG. CO.           :
                                      :
        Defendant-Intervenors.  :
- - - - - - - - - - - - - - ----x
```

## Judgment

     This action has been duly submitted for decision, and this Court, after due deliberation, has rendered a decision herein; now, in conformity with that decision, it is hereby

     ORDERED that Commerce's <u>Final Results of Redetermination Pursuant to Remand, Dorbest Ltd.; Rui Feng Woodwork (Donguan) Co. Ltd.; Rui Feng Lumber Dev. (Shenzhen) Co. Ltd. v. United States</u>, (July 15, 2008) are affirmed.


Dated:    January 07, 2009
          New York, New York

                   /S/       Donald C. Pogue
                              Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                              Deputy Clerk