SLIP OP 11-95

**UNITED STATES COURT OF INTERNATIONAL TRADE**

DORBEST LTD., et al.,

             Plaintiffs,

                   v.                      Before: Pogue, Chief Judge
                                           Consol. Court No. 05-00003
UNITED STATES,

             Defendant.

<u>OPINION</u>

[Commerce's remand determination affirmed.]

Decided: August 3, 2011

        <u>Mowry & Grimson PLLC</u> (<u>Kristin H. Mowry</u>, <u>Jeffrey S. Grimson</u>, <u>Jill A. Cramer</u>, <u>Susan E. Lehman</u>, and <u>Sarah M. Wyss</u>) for Plaintiffs Dorbest Limited <u>et al.</u>;

        <u>King & Spalding LLP</u> (<u>Joseph W. Dorn</u>, <u>Stephen A. Jones</u>, <u>Jeffrey M. Telep</u>, <u>J. Michael Taylor</u>, <u>Daniel L. Schneiderman</u>, and <u>Ashley C. Parrish</u>) for Defendant-Intervenors American Furniture Manufacturers Committee for Legal Trade, <u>et al.</u>;

        <u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Stephen C. Tosini</u>, <u>Carrie A. Dunsmore</u>, and <u>Brian A. Mizoguchi</u>); <u>Rachael E. Wenthold</u>, Senior Attorney, Of Counsel, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for the United States Department of Commerce; and

        <u>Trade Pacific PLLC</u> (<u>Robert G. Gosselink</u>) on behalf of Defendant-Intervenors Dongguan Lung Dong/Dong He, <u>et al</u>.

        **Pogue, Chief Judge**:  This matter concerns the selection of

"surrogate" countries as a source for data with which to

calculate the labor wage rate in an antidumping investigation

involving wooden bedroom furniture from China, a non-market

economy ("NME").  The case now returns to the court after the

Department of Commerce's ("Commerce")redetermination, <u>Final</u>

<u>Results of Redetermination Pursuant to Remand</u>, (Apr. 27,

2011)("<u>2011 Redetermination</u>"), following a partial remand order

in <u>Dorbest Ltd. v. United States</u>, __ CIT __, 755 F. Supp. 2d 1291

(CIT 2011)("<u>Dorbest V</u>").[1]

     Plaintiff/Respondent, Dorbest Ltd. ("Dorbest"), seeks review

of Commerce's data choices in the 2011 Redetermination.  Dorbest

claims that Commerce's methodology for selecting the endpoint or

"bookend" countries, which form the range of countries available

for consideration as a data source, was contrary to established

agency precedent and unsupported by substantial evidence, and

that Commerce should have used absolute numerical differences in

per-capita Gross National Income ("GNI") for the identification

of "bookend" countries.  <u>Dorbest Comments on Fifth Remand</u>

<u>Redetermination</u> 2-4, (May 18, 2011)("<u>Dorbest Comments</u>").  Dorbest

further asserts that Commerce's inclusion of Equatorial Guinea in

the initial list of countries available for consideration, and

_____

     [1] <u>Dorbest V</u> was a review of Commerce's prior 2010 remand
determination.  <u>Final Results of Redetermination Pursuant to</u>
<u>Remand</u>, (Nov. 10, 2010) ("<u>2010 Redetermination</u>").  There is
substantial history in this matter.  <u>See Dorbest V</u>, 755 F. Supp.
2d at 1294-97.  Familiarity with that history, and the court's
prior opinions, is presumed.

Commerce's determination that Guinea was a significant producer

of the subject merchandise, are unsupported by substantial

evidence.[2] Id. at 5.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c)

(2006). After a brief review of the agency's methodology and the

applicable standard of review, the court will explain why it

concludes that Commerce's methodology for selecting its initial

bookend countries, as adopted in the 2011 Redetermination, is

reasonable in the context here, and supported by a reasonable

reading of the record evidence. The court also concludes that

Dorbest has waived its other arguments. Commerce's final

redetermination pursuant to remand is therefore affirmed.

---

[2] Dorbest also challenges Commerce's 2011 redetermination on
the grounds that this court made a factual error in Dorbest V.
Dorbest Comments 3. Citing the court's use of 2002 per-capita
GNI for China as supplied by Petitioners and apparently
downloaded during the court's review of the 2010 remand
determination – rather than the 2002 data available at the time
of the original investigation – Dorbest notes that the data used
by Commerce resulted in an upper bookend country that was above
China's GNI and that Commerce should therefore not have
recalculated the surrogate wage rate using different bookend
countries. Dorbest Comments 6-7. However, Commerce was correct
in reading Dorbest V as expressing the court's concern with the
overall imbalance in Commerce's data set, an imbalance which
remained uncorrected even when using the 2002 data available at
the time of the original investigation. See 2011 Redetermination
15. The court recognizes that China's per-capita GNI, using data
available at the time of the original investigation, was USD 940,
rather than the 1100 USD supplied by Petitioners and cited by the
court in Dorbest V. The court also notes, however, that Dorbest
did not object to the Petitioner's data in the proceeding leading
to Dorbest V. See Dorbest Comments on 2010 Remand, Dec. 2, 2010,
ECF No. 452,("Dorbest 2010 Comments").

**BACKGROUND**

When determining surrogate labor rates, Commerce is required by statute to use data from countries that are both "economically comparable" to the nonmarket economy at issue, and "significant producers" of comparable merchandise.  19 U.S.C. § 1677b(c)(4); Dorbest Ltd. v. United States, 604 F.3d 1363, 1372–73 (Fed. Cir. 2010)("Dorbest IV").

In its 2010 Redetermination, following the Court of Appeals for the Federal Circuit's ("Federal Circuit" or "CAFC") invalidation of the regulation which previously governed surrogate labor rate calculation, Commerce created a new methodology to calculate surrogate labor rates.  2010 Redetermination 1–2.  Under this new methodology, to select economically comparable countries, Commerce first chose a pair of countries to act as endpoint or "bookend" countries.  In making this "bookend" selection, Commerce turned to the surrogate country memorandum from the original 2003 investigation and chose the two countries listed therein that had the highest and lowest GNI.[3]  Id. at 12–13.  Commerce then identified the countries with GNIs in the range between the GNI of the two bookend countries,

_____

[3] Commerce asserted in the 2010 Redetermination that it placed the most emphasis on GNI as an indicator of economic comparability.  2010 Redetermination 12.  It used the surrogate country memorandum as a starting point because it had already been created (albeit not for surrogate labor rate calculation) and contained a list of countries which were deemed economically comparable to China.  See id.

including those two bookend countries.  Id. at 13.  These

identified countries then became the universe or "basket" of

countries available for consideration as a source of surrogate

labor wage rate data.[4]

The result in the 2010 Redetermination was a group of

countries with GNIs which were largely skewed toward a spectrum

below China's GNI.  Upon review of that decision, in Dorbest V,

the court held that Commerce must either reconsider its selection

of that significantly unbalanced pair of endpoint or "bookend"

countries, or provide a reasonable explanation as to why it

selected these countries as its starting point.  Dorbest V, 755

F. Supp. 2d at 1299.

In its 2011 Redetermination, responding to Dorbest V,

Commerce has amended its methodology by expanding the range of

countries available for initial consideration as the source of

surrogate labor rate data.  Under this amended methodology,

Commerce has selected a pair of "bookend" countries so that the

range includes a number of countries with GNIs higher than

China's GNI equal to the number of countries with GNIs lower than

---

[4] In the 2010 Redetermination, none of the parties
challenged Commerce's initial choice to use a "bookend"
methodology for selecting an initial basket of countries; nor did
the parties challenge whether the initial basket of countries are
truly economically comparable to China.  Rather, Petitioners
challenged the data that Commerce used in its subsequent
selection and calculations.  See Dorbest V, 755 F. Supp. 2d at
1293–94.

China's.  <u>2011 Redetermination</u> at 6.[5]

The next step in Commerce's methodology is to ascertain which countries in this "basket" are also significant producers of wooden bedroom furniture.[6]  Commerce has defined "significant producer" as any country which "had exports of comparable merchandise between 2001 and 2003."  <u>Id.</u> at 8-9.  From the resulting 30 countries, Commerce then determines which countries reported the necessary wage rate data.  <u>Id.</u> at 9.  In this case, only 17 countries reported "reliable wage data."  <u>Id.</u> at 9-10. Finally, as before, Commerce further refines its list by applying a filtering step to determine which countries reported industry-specific wage data under ISIC Rev. 2, Sub-Classification 33.[7]  <u>Id.</u> at 12.

Based on this analysis, Commerce has identified Colombia,

---

[5] The lower bookend country remains the same.  <u>Id.</u> at 6-7. Commerce has selected the upper bookend such that it obtains a number of countries with GNIs above that of China's equal to the number of countries with GNIs below that of China's.  2011 Redetermination at 6-7.  This approach is sometimes called the "country count methodology."  <u>See</u> <u>e.g.</u>, <u>id.</u>  The result is a list, or "basket," of 46 countries with GNIs that that fall between the low and high "bookends," Pakistan (GNI 410 USD) and Colombia (GNI 1,830 USD), respectively.  <u>Id.</u> at 6-7.

[6] The remainder of Commerce's methodology remains unchanged from the 2010 redetermination.

[7] This aspect of Commerce's methodology was affirmed in <u>Dorbest V</u>.  <u>Dorbest V</u>, 755 F. Supp. 2d at 1303.  Here, as in the prior remand results, Commerce properly explains that ISIC Rev. 2 Sub-Classification 33 was more specific to wooden bedroom furniture than ISIC Rev. 3 Sub-Classification 36.  <u>See</u> <u>2011 Redetermination</u> at 12; <u>2010 Redetermination</u> at 28-29.

India, Indonesia, Pakistan and Macedonia as countries
economically comparable to China which are significant producers
of wooden bedroom furniture, and from which the preferred wage
data is available.  Using the data from these five countries,
Commerce has calculated an average wage rate of 0.44 USD/hour.
Using that average wage rate as a surrogate for the cost of labor
in the production of Dorbest's merchandise, Commerce has
determined that Dorbest has an antidumping margin of 2.40
percent.  Id. at 24.

### STANDARD OF REVIEW[8]

The court will find Commerce's remand redetermination
unlawful if it is "unsupported by substantial evidence on the
record, or otherwise not in accordance with law[.]"  19 U.S.C.
§ 1516a(b)(1)(B)(i).  Substantial evidence is that which, given
the record as a whole, "'a reasonable mind might accept as
adequate to support a conclusion[,]'" when evaluating the
agency's findings.  Universal Camera Corp. v. N.L.R.B., 340 U.S.
474, 477, 491 (1951) (quoting Consol. Edison Co. v. N.L.R.B., 305
U.S. 197, 229 (1938)).

The court notes further that, in presenting its findings,
the agency must explain its standards and "rationally connect

---

[8] No party claims that Commerce's 2011 Redetermination fails
to comply with the court's remand order in Dorbest V.  See
Amanda Foods (Vietnam) Ltd. v. United States, Slip Op 11-39, 2011
WL 1423125 at *3 (CIT Apr. 14, 2011)

them to the conclusions drawn from the record." <u>U.S. Steel Corp.</u> <u>v. U.S.</u>, Slip Op 10-104, 2010 WL 3564705 at *1 (CIT 2010)(citing <u>Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut.</u> <u>Ins. Co.</u>, 463 U.S. 29, 43 (1983); <u>Matsushita Elec. Indus. Co. v.</u> <u>United States</u>, 750 F.2d 927, 933 (Fed. Cir. 1984)).  The conclusion Commerce reaches need not be the best or only possible conclusion, merely a reasonable one.  <u>See</u> <u>Lifestyle Enterprise,</u> <u>Inc. v. United States</u>, __ CIT __, 768 F. Supp. 2d 1286, 1305 (2011).

## DISCUSSION

**Commerce's country-count methodology.**

Dorbest asserts that Commerce's determination was contrary to its established agency practice in counting upwards from China's per-capita GNI to ensure a more balanced set of bookends from which to select economically comparable countries.  <u>Dorbest</u> <u>Comments</u> at 10-11.  Dorbest further asserts that this method is results-oriented and arbitrary and that using a range based on numerical difference in GNI would have resulted in a more reasonable set of results.  Specifically, Dorbest advocates placing Egypt (GNI 1,470 USD) as the upper bookend country.  <u>Id.</u> at 17.  Dorbest claims that because Egypt's GNI is USD 530 above China's and Pakistan's is USD 530 below China, this is a more appropriate way to achieve balanced bookends.  <u>Id.</u> at 19.

Accordingly, Dorbest claims, Commerce's bookend choices are
unsupported by substantial evidence in the record.[9]  Id. at 21.

     Where Commerce adopts a practice that substantially deviates
from precedent, it must at least acknowledge the change and show
that there are good reasons for the new policy. [10] Pakfood Pub.
Co. Ltd. v. United States, ___ CIT ___, 753 F. Supp. 2d 1334,
1341–42 (2011)(citations omitted).  The new practice must also be
within the scope of authority granted to Commerce by the relevant
statute.  Id.  Commerce may depart from an established practice
so long as it does so in the manner required by law.  Id.

     Here, Commerce clearly explains that the methodology
employed is "appropriate only in this unique instance."  2011

_____

     [9] The court notes that Commerce recently announced a new
methodology for calculating surrogate wage rate in proceedings
initiated on or after June 21, 2011.  See Antidumping
Methodologies in Proceedings Involving Non-Market Economies:
Valuing the Factor of Production: Labor, 76 Fed. Reg. 36,092
(Dep't Commerce June 21, 2011).  Under the new methodology,
Commerce will no longer use multiple countries to calculate
surrogate wage rate, and will instead rely on data from the
primary surrogate country.  Id. at 36,093.  While Dorbest urges
the court to hold that Commerce's current methodology is unlawful
when considered in light of Commerce's recent announcement, the
court cannot do so because Commerce's change in methodology is
not retroactive.  Id.

     [10] "This is not to say that Commerce's prior determinations
are legally binding in subsequent administrative proceedings . .
. . Nevertheless, Commerce must comply with the basic principle
of law that, absent a rational explanation for acting to the
contrary, like cases should be decided alike."  Pakfood Pub. Co.
Ltd. v. United States,___ CIT ___, 753 F. Supp. 2d 1334, 1342
n.20 (2011)(citations omitted).

Redetermination at 8.  Conceding that the set of bookends used in
the 2010 redetermination resulted in a basket of countries that
was "largely unbalanced," Commerce has applied a methodology
explicitly designed to address the problem as identified by the
court in Dorbest V.  Id. at 8, 16-17.  Commerce further explains
that, given the inherent imbalance in the first set of bookend
countries and the "uniqueness of the data in this investigation,"
this methodology constitutes the "best option in this instance."
Id. at 17 & n.42 (noting other instances where the bookend
countries based on surrogate country memoranda resulted in an
"initial basket of economically comparable countries [that] was
more equitably distributed around [China]").[11]

     In response to Dorbest's assertion that Commerce should have
used a specific numerical difference in per-capita GNI to
calculate the number of countries, with Egypt as the upper
bookend, Commerce responds that, in the global context, it finds
countries with GNIs as high as Colombia's to be economically

_____

     [11] Dorbest incorrectly asserts that the administrative
decisions to which Commerce cites do not support Commerce's
assertion that the countries in those surrogate country memoranda
are more equally distributed than those here.  Dorbest Comments
at 18.  To the contrary, the Issues and Decision Memoranda for
the two decisions cited by Commerce both clearly provide GNI data
for the upper and lower bookend countries.  See Certain
Chlorinated Isocyanurates from the People's Republic of China,
A-570-898, Comment 2 at 9-10, (Nov 10, 2010)(noting 1,040-3,990
USD as the GNI range used); Certain Steel Nails from the People's
Republic of China, A-570-909, Comment 2 at 5, (Mar. 23, 2011)
(noting 1,070-3,990 USD as the GNI range used).

comparable to China's and that its decision is consistent with
the CAFC's holding in Dorbest IV.  2011 Redetermination 7, 18
(noting that the CAFC held in Dorbest IV that countries with GNIs
"between one and two times that of China" could be found
economically comparable).  Furthermore, Commerce has not
established a practice of using absolute differences in per-
capita GNI to select bookend countries and has in the past
rejected a strict adherence to that approach.  See Def-Int. Br.
at 6 (citing Certain Aluminium Extrusions from the People's
Republic of China, 76 Fed. Reg. 18,524 (Dep't Commerce Apr. 4,
2011), and accompanying Issues & Decision Memorandum at Comment
1E). Finally, Commerce argues that this approach is consistent
with its long-standing preference for drawing data from a broader
dataset.  2011 Redetermination 8.

     Commerce has provided sufficient reasonable explanation for
choosing the country count methodology in this instance.  Here,
the parties have not objected to Commerce's approach of using
some "bookends" to frame its initial selection.  Given that the
agency is using "bookends" to make such an initial selection, it
is not obligated to choose the best methodology, but merely one
that is reasonable given the circumstances and supported by a
rational connection to the record.  See Natl. Fisheries Inst. v
U.S. Bureau of Customs & Border Prot., 637 F. Supp. 2d 1270, 1286
(2009).  Faced with the task of replacing an unbalanced and

invalidated selection based on a surrogate country memorandum

compiled for other purposes, Commerce has explicitly chosen a

methodology in response to the court's concerns.  It has also

provided a reasonable explanation for its selection in this

context, and it has selected bookend countries based on a

reasonable reading of the record evidence.  The fact that Dorbest

can suggest other reasonable methods does not alter this result.

See Lifestyle Enterprise, Inc. v. United States, __ CIT __, 768

F. Supp. 2d 1286, 1305 (2011).

 **Commerce's inclusion of Equatorial Guinea in the dataset.**

    Dorbest next asserts that Commerce erred in including data

from Equatorial Guinea because that data was from a different

time period than other GNI data.  Dorbest Comments 21-22.

    The court need not address Dorbest's concerns regarding the

inclusion of Equatorial Guinea because Dorbest waived its right

to challenge this Commerce finding, which first appeared in the

2010 Redetermination.  Bond Street, Ltd. v. United States, 2011

WL 1398770 at *9 n.4 (CIT Apr. 12, 2011)

    In that 2010 Redetermination, Commerce used the 2002 GNI

figures, as reported in the 2004 World Development Report, to

generate a list of 24 countries with GNIs between USD 410 and USD

1,020.  2010 Redetermination 12.  Equatorial Guinea, with a GNI

of USD 700, is on that list.  Request for Comment Regarding Wage

Rate Data, 2010 PR Doc. 1 Attach. 1 (August 11, 2010).  In its

comments on those remand results, Dorbest raised a general

concern with the use of multiple countries to generate a

surrogate wage rate, but did not object to, or even address, the

inclusion of Equatorial Guinea.  See Dorbest 2010 Comments

("Dorbest concurs with the result of the U.S. Department of

Commerce remand redetermination filed on November 10, 2010");

Dorbest 2010 Remand Comments on Wage Rate Data 2, 2010 Remand PR

Doc. 4 (Aug. 16, 2010) (arguing in part that wage rates from one

country, India, should be used and failing to raise the issue of

2002 Equatorial Guinea data) ("Dorbest 2010 Wage Rate Data

Comments"); Dorbest 2010 Remand Rebuttal to AMFC Raw Data

Comments 8, 2010 Remand PR Doc. 5 (Aug. 18, 2010) (reiterating

the argument that only India should be used to provide surrogate

wage rate and failing to raise the issue of 2002 Equatorial

Guinea data) ("Dorbest 2010 Rebuttal"); Dorbest 2010 Remand

Comments on Draft Remand Redetermination 3, 2010 Remand PR Doc.

12 (Oct 22, 2010 (stating which arguments are preserved in the

event that the margin rises above de minimis) ("Dorbest 2010

Draft Comments").  Dorbest has thus waived this argument.[12]

        Accordingly, any arguments that Dorbest may have with

---

[12] Because Dorbest also failed in the underlying 2010
administrative proceeding to challenge Commerce's inclusion of
Equatorial Guinea, it has also failed to exhaust its
administrative remedies on this issue.  28 U.S.C. § 2637(d).

regards to the inclusion of Equatorial Guinea are not properly
raised before the court.

**Guinea as a "substantial producer."**

Finally, Dorbest correctly argues that Commerce erred in
including Guinea because its reported export figure, USD $308
over the course of three years, cannot possibly be sufficient, by
itself, to support a determination that Guinea is a significant
producer of wooden bedroom furniture.  Dorbest Comments 24
(citing Shandong Rongxin Import & Export Co. v. United States,
Slip Op 11-45, 2011 WL 1542651 at *8, (CIT Apr. 21, 2011));
Analysis Memorandum for the Redetermination, 2011 PR Doc. 2, ECF
Doc. 475-1, Attach. 3 at 85, (Mar. 14, 2011).

As with its Equatorial Guinea claim, however, Dorbest's
arguments with regards to Guinea are waived.  Guinea was first
identified as a significant producer in the 2010 Redetermination,
see 2010 Redetermination at 13, and Dorbest failed to timely
contest this decision.  See Dorbest 2010 Comments ("Dorbest
concurs with the result of the U.S. Department of Commerce remand
redetermination filed on November 10, 2010"); Dorbest 2010 Wage
Rate Data Comments 2 (failing to raise the issue of data from
Guinea); Dorbest 2010 Rebuttal 8; Dorbest 2010 Draft Comments 3
(stating which arguments are preserved in the event that the
margin rises above de minimis).  Dorbest has thus waived its
argument in this regard.

## CONCLUSION

The court finds that Commerce's methodology for calculating surrogate labor rate is **affirmed**.

Judgment will be entered accordingly.


    /s/ Donald C. Pogue
Donald C. Pogue, Chief Judge


Dated:      August 3, 2011
            New York, New York

**SLIP OP 11-95**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

```
┌─────────────────────────────────────┐
│ DORBEST LTD., et al.,                │
│                                      │
│          Plaintiffs,                 │
│                                      │
│              v.                      │
│                                      │
│ UNITED STATES,                       │
│                                      │
│          Defendant.                  │
│                                      │
└─────────────────────────────────────┘
```

Before: Pogue, Chief Judge
Consol. Court No. 05-00003

**JUDGMENT**

The court having heard and decided this matter, now in accordance with that opinion, Commerce's final redetermination on remand is sustained.

_____/s/ Donald C. Pogue_____
Donald C. Pogue, Chief Judge

Dated:    August 3, 2011
          New York, New York